JESS HONEYCUTT V. STATE.

No. 25698. February 20, 1952.
Rehearing Denied April 23, 1952.

Hon. R. C. Slagle, Jr., Judge Presiding.

*Cox & Cox,* Sherman, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is assault with intent to murder; the punishment, two years.

One Williams, the proprietor of a night club, testified that appellant and the two Baker brothers arrived at his place of business on the night in question and that, upon noticing appellant, with whom he had had some prior difficulty, he refused admission to him. Williams stated that he requested the group to leave, but that they were slow to respond; and, in the hope of hastening their departure, he picked up a stool and, in a manner, threatened them with it. Williams stated that at this juncture appellant told him to put the stool down and that he did so thinking that the parties had consented to leave, but that after he had lowered the stool the appellant drew a pistol and shot at him three times, all the while demanding that he keep his hands above his head. Williams stated that while the shots were being fired at him he jumped from one place to another and finally got back into his living quarters, which were in a part of the night club building, and was successful in avoiding the bullets. Williams related that after he had retreated to his kitchen appellant came to the window thereof and looked in, that his wife extinguished the light, and this ended the difficulty. Williams admitted that he had a pistol on his person on the night in question, but denied that he ever removed the same from his pocket.

Williams was corroborated in his testimony by four witnesses, who were all those present at the club at the time in question other than the members of appellant's party. One of the four differed in his testimony from the others in that he stated that the stool in Williams' hands was still in the air at the time the first shot was fired.

Appellant testified in his own behalf, admitted a beer drinking expedition into Oklahoma prior to the difficulty with Williams, and testified that he shot the first time to protect himself from the upraised stool in the hands of Williams, and that he fired the remaining two shots in order to keep Williams from using his pistol on him and in order to cover his retreat from the building. Appellant testified that he never intended to hit Williams with any of the bullets and that there was nothing to prevent him from doing so, since he had free use of his pistol during the shooting. Appellant testified that twice during the affray Williams had drawn his pistol but does not claim that it was ever fired or even pointed in his direction. Part of his testimony was supported by that of the Baker boys. Appellant denied having appeared at the kitchen window following the shooting.

The jury heard the evidence and resolved the issue of self-defense against the appellant. We conclude that they were justified in so doing and affirm the sufficiency of the evidence to support the conviction.

Appellant asks for a reversal on the grounds set forth in his amended motion for new trial as follows:

1. That the juror Wright had concealed the fact on voir dire examination that he had been interested in the prosecution of one charged with crime. It will be seen from a study of the statement of facts on motion for new trial that the juror concealed nothing on the voir dire examination. The question was asked the panel if any of them had ever been interested in the prosecution or defense of any one charged with crime. The panel remained mute. It was proven that the juror Wright had been robbed some twenty-five years before, but that the robber was never apprehended for the crime and never prosecuted therefor, hence there was no concealment.

2. That the juror Wright communicated the above experience about having been robbed and drew deductions therefrom in the presence of the jury during their deliberations. One

juror called by the defendant testified that juror Wright had told the jury of having been robbed and concluded from that experience "that a person got angry enough to kill on the spur of the moment." He stated that such a statement did not influence him in reaching a verdict. The state called the other eleven jurors; ten of them stated that they did not hear any such remark, and Wright stated categorically on direct examination that he did not make such a statement and that he had forgotten all about the incident. On cross-examination, he said that he did not remember having made such a statement.

This created an issue of fact as to whether new and harmful evidence had been received by the jury during their deliberations. We conclude that the trial court has not been shown to have abused his discretion in resolving this issue against the appellant.

3. That there was an unauthorized person with the jury while they were deliberating upon the case. It was shown that Mr. Jones, the deputy county clerk, had retired to the jury room to make use of the toilet facilities there situated; that while so engaged the jury were brought into their quarters, and the door to the jury room locked by the bailiff. Jones immediately made his presence known to the jury, and each member thereof testified that Jones said nothing to any of them individually and that he did not mention the case they were considering. Mr. Jones' conduct during his forced confinement with the jury may best be described in the words of the jurors themselves, as follows: "He looked like a sheep that had been hemmed up in a corner someplace and didn't know what to do with himself." "He just said, 'I have got no business in here. I have got to get out.'"

It will be seen that the state fully discharged the burden resting upon it to show that there was no conversation with reference to the case between the jurors and their involuntary and unauthorized companion.

4. Appellant seeks to raise an objection to the court's charge which was brought to the trial court's attention for the first time in his amended motion for new trial. This clearly came too late.

Under Article 658, C. C. P., Note 67, numerous authorities are cited which support the holding on this question.

Finding no reversible error, the judgment of the trial court is affirmed.

#### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that the facts fail to evidence an intent to kill. This contention is made chiefly upon the theory that appellant could easily have killed the injured party by shooting him with the pistol, which he did not do.

Of course the fact that one is in position to kill another and does not do so is a strong circumstance tending to show a lack of intent to kill, but where the instrument with which the assault is committed is a deadly weapon per se, as here, the intent to kill may be inferred. Trimble v. State, 148 Tex. Cr. R. 596, 190 S. W. 2d 123; Kincaid v. State, 150 Tex. Cr. R. 45, 198 S. W. 2d 899.

We are constrained to conclude that under the facts presented the jury was authorized to find that appellant intended to kill the injured party and that the conviction was warranted by such facts.

The other questions presented have been re-examined, and we remain convinced that a correct conclusion was reached originally.

The motion for rehearing is overruled.

Opinion approved by the court.